UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

General Revenue Corporation,

    Plaintiff,

    v.                                        Case No.  1:05cv425

Troy Ortega,                             Judge Michael H. Watson

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court upon Plaintiff's Motion to Stay Arbitration (Doc. 5) and Defendant's Motion to Stay Pending Arbitration (Doc. 10).  Also before the Court are Plaintiff's Motion for Preliminary Injunction (Doc. 3), Plaintiff's Motion to Expedite (Doc. 4); and Defendant's Motion to Dismiss. (Doc. 14)  These motions have been fully briefed and are now ripe for review.

**I.    FACTS**

Defendant Troy Ortega was employed with Plaintiff General Revenue Corporation ("GRC") from February 26, 2003 until February 21, 2005.  (Doc. 1 ¶ 2)  GRC is in the business of collecting unpaid loans and accounts, including but not limited to student loans and other unpaid educational debt, tax debt, credit card debt and other accounts receivable.  (Id. ¶ 1)

1

Given the nature of its business, GRC takes reasonable measures to protect its confidential information, including requiring employees that are exposed to that information to sign non-competition agreements and confidentiality agreements, and comply with separate confidentiality policies. (Id. ¶ 9) Ortega's employment with GRC was controlled by an Employment Agreement ("Agreement") entered into by the parties on January 22, 2004. (Id. ¶ 10 & Ex. A)

Ortega voluntarily ended his employment with GRC on February 21, 2005. (Id. ¶ 15) In March 2005, GRC was informed that Ortega was interviewing for a position with Apex, a Hilco subsidiary and direct competitor of GRC in the debt collections services. (Id. ¶¶ 16, 17) Ortega requested that GRC make an exception to the non-compete portion of the Agreement, but GRC declined and advised Ortega's counsel that such employment would be in violation of the Agreement. (Id. ¶ 16) In addition, GRC threatened Ortega with a lawsuit and further threatened Hilco that it would be sued if it hired Ortega. (Doc. 10, Ex. A ¶ 13) GRC believes that such employment, or even threatened employment, constitutes a violation of his obligations under the Agreement and that the Agreement provides that GRC is entitled to injunctive relief. (Doc. 1, ¶ 25)

The Agreement contains two paragraphs that are presently at issue. Paragraph 12: "Governing Law, Forum," states that:

> Employee agrees that the validity, construction and effect of this Agreement shall be governed by the laws of Ohio regardless of any otherwise applicable choice of law provisions, and that any action to interpret or enforce this Agreement shall be brought and maintained only in the Court of Common Pleas, Hamilton County, Ohio, or the United States District Court for the Southern District of Ohio, Western Division.

(Doc. 1, Ex. A ¶ 12) Paragraph 13: "Arbitration," states:

2

> If any dispute arising under this Agreement is not settled promptly in the ordinary course of business, the parties shall first attempt to resolve any such dispute by negotiating promptly with each other in good faith. If the parties are unable to resolve the dispute between them within twenty (20) business days (or such other period of time as the parties may otherwise agree to) through negotiations, then any such disputes shall be fully and finally settled by binding arbitration in accordance with this Agreement and the following procedures:
>
> (a)  Any arbitration shall be conducted pursuant to the Commercial Rules of the American Arbitration Association (hereinafter "AAA") then in effect.
>
> . . .
>
> (g)  Judgment may be entered on any arbitration award in any court of competent jurisdiction.

(Id. ¶ 13)

On June 6, 2005 Ortega filed a demand for arbitration with the American Arbitration Association ("AAA") in Cincinnati. (See Doc. 10, Ex. A) GRC subsequently filed this action with this Court on June 22, 2005, seeking preliminary and permanent injunctive relief, declaratory judgement, and damages. On that same day, GRC also submitted a letter to the AAA contending that Ortega was prevented from initiating arbitration and that the dispute was required to resort to the courts. (Doc. 10, Ex. E) Then, on June 30, 2005, GRC requested that the AAA suspend proceedings pending this litigation, and concurrently filed this Motion to Stay Arbitration. (Doc. 10 Ex. H; Doc. 5) In response, Ortega filed a consolidated Memorandum in Support of Defendant's Motion to Stay Pending Arbitration and in Opposition to Plaintiff's Motion to Stay Arbitration. (Doc. 10) The AAA determined on July 22, 2005 that it would suspend administration of Ortega's demand for sixty days effective June 22, 2005 through August 22, 2005 to permit GRC to obtain a stay of arbitration from the Court. (Doc. 13 Ex. A)

3

## II.     ARGUMENTS OF THE PARTIES

The parties' arguments revolve around the interpretation of the Agreement between GRC and Ortega.  GRC believes that paragraph 12 applies to the current dispute; whereas Ortega believes that paragraph 13 should apply.

GRC argues that Ortega's action of initiating and demanding arbitration with AAA is an attempt to avoid and nullify the express language of paragraph 12.  GRC argues that forum selection clauses similar to paragraph 12 have been held to be valid and enforceable.  GRC argues that contract principles require the application of the forum selection clause.  GRC maintains that paragraph 13 would only apply to an employment-related dispute which did not involve "actions to interpret or enforce" the Agreement.  Finally, GRC argues that since arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.   Ortega argues that federal and Ohio policy favors the enforcement of agreements to arbitrate.  Ortega argues further that the language of paragraph 13 is comprehensive and plain in requiring submission of "any dispute arising under this Agreement" to arbitration.  Ortega contends that paragraph 12 exists for the purpose of conferring jurisdiction in this Court or the Hamilton County Court of Common Pleas to enforce an arbitration award pursuant to paragraph 13(g).  Ortega argues that even if there is an ambiguity in paragraphs 12 and 13, where there is a standardized written contract between parties of unequal bargaining power, ambiguities is to be interpreted strictly against the drafter, which is GRC.

**III.     ANALYSIS**

It is well-settled in American law that courts should enforce private agreements to resolve disputes by mandatory binding arbitration.  The Federal Arbitration Act ("FAA") codifies this principle:

> A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract*.

9 U.S.C. § 2 (emphasis added); *see also* Ohio Rev. Code § 2711.01 (a written arbitration provision "shall be valid, irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract.").  The Supreme Court has recognized the federal public policy favoring arbitration, and stated that courts must vigorously enforce arbitration clauses.  *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987).  "When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue."  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000), *citing*, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration.  *Id.*  Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration.  *Id.; see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (citation omitted) ("[i]t is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration.")

5


State law generally governs issues concerning the validity, revocability, and enforceability of arbitration agreements, with the exception that courts may not invalidate an arbitration contract under state laws applicable only to arbitration provisions. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002)*; Pritchard v. Dent Wizard International Corp.*, 275 F.Supp.2d 903, 915 (S.D. Ohio 2003).

Paragraph 12 states that ". . . any action to interpret or enforce this Agreement shall be brought and maintained only in the Court of Common Pleas, Hamilton County, Ohio, or the United States District Court for the Southern District of Ohio, Western Division." However, paragraph 13 states that "any dispute arising under this Agreement . . . shall be fully and finally settled by binding arbitration in accordance with this Agreement. . . ." In addition, paragraph 13(g) provides that "[j]udgment may be entered on any arbitration award in any court of competent jurisdiction." Reading these paragraphs together, the Court finds that this Court has jurisdiction regarding the interpretation or enforcement of the Agreement itself, but any underlying dispute must be settled by binding arbitration. The resulting judgment could then be entered by any court of competent jurisdiction, including this Court.

However, GRC is seeking to "enforce" provisions of the Agreement, namely paragraph 9 of the Agreement, which provides for injunctive relief in the event of a breach of the Agreement; paragraph 5, which pertains to confidential information; and paragraph 8, which is an agreement not to compete or solicit. GRC argues that paragraph 12 is therefore applicable because paragraph 13 only applies to an employment-related disputes which do not involve actions to enforce the Agreement. If GRC's interpretation is correct, there would be an ambiguity in the Agreement because paragraph 13 applies where there

is "any dispute arising under" the Agreement. Even if the Court were to read this ambiguity into the Agreement, this Court is obligated to resolve any ambiguities in the Agreement or doubts as to the parties' intentions in favor of arbitration.

Moreover, "where the written contract is standardized and between parties of unequal bargaining power, an ambiguity in the writing will be interpreted strictly against the drafter and in favor of the nondrafting party." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1262 (Ohio 2003), *citing*, *Central Realty Co. v. Clutter*, 406 N.E.2d 515 (Ohio 1980). The Agreement is a standardized agreement created by GRC. Neither Ortega nor any other employee of GRC had any bargaining power in the terms of the Agreement. Employees were asked to sign the agreement as part of their continued employment. (Doc. 10, Ex. B) As the drafter of the Agreement, GRC is held accountable for any potential ambiguities therein. Therefore, any ambiguity regarding where disputes should be heard is to be interpreted in favor of Ortega, the non-drafting party.

Finally, the Agreement provides that any disputes arising under the agreement "shall be fully and finally settled by binding arbitration." Where the terms of an agreement provide that the arbitrator's decision is final and binding, the federal courts have held that dismissal is appropriate on that basis, once it has been determined that arbitration indeed must be compelled. *Raasch v. NCR Corp.*, 254 F.Supp.2d 847, 851 (S.D.Ohio 2003). However, dismissals of actions that do not reach the merits of a claim, such as dismissals for lack of jurisdiction, ordinarily are without prejudice. *Bauer v. RBX Industries, Inc.*, 368 F.3d 569, 581 (6th Cir. 2004).

Based on the foregoing reasons, Plaintiff's Motion to Stay Arbitration (Doc. 5) is **DENIED** and Defendant's Motion to Stay Pending Arbitration (Doc. 10) is **GRANTED**.

Based on the Court's interpretation of the Agreement, the Court finds that it presently does not have jurisdiction over this matter, and accordingly, Defendant's Motion to Dismiss (Doc. 14) is **GRANTED** pursuant to Federal Rule of Civil Procedure 12(b)(1).  This matter shall be **DISMISSED WITHOUT PREJUDICE** and stricken from the Court's docket.

    **IT IS SO ORDERED.**

                                                /s/ Michael H. Watson
                                       **MICHAEL H. WATSON, JUDGE**
                                       **UNITED STATES DISTRICT COURT**